UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROMAN SCHWARTZ, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      Case No. 16-cv-11506-LTS |
| | ) |
| KEOLIS COMMUTER SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

ORDER ON MOTIONS (DOC. NOS. 47, 49, 55, 57, 73, 75, and 78)

March 20, 2018

SOROKIN, J.

Plaintiffs sue Defendants Keolis Commuter Services, LLC ("Keolis") and Unum

Corporation (doing business as Unum Life Insurance Company of America and referred to

herein as "Unum") under the Employee Retirement Income Security Act of 1974 (ERISA) in

relation to an employee benefit plan (the "Plan") enrolled in by the late Sofiya Schwartz. Keolis

moves for summary judgment on Plaintiffs' claims against Keolis, Doc. No. 47, and Plaintiffs

cross-move for summary judgment on those claims, Doc. No. 55. Likewise, Unum requests

summary judgment on Plaintiffs' claims against Unum, Doc. No. 49, and Plaintiffs cross-move

for summary judgment on those claims, Doc. No. 57. Plaintiffs also move to amend their

Complaint and to strike testimony in the affidavit of Keolis's expert witness. Doc. Nos. 73, 75.[1]

For the reasons set forth herein, the Court DENIES Plaintiffs' motion to amend; DENIES

---

[1] The Court ALLOWS as unopposed Plaintiffs motion to amend their cross-motion for summary
judgment on their claims against Unum (Doc. No. 78).

Plaintiffs' motion to strike; ALLOWS Unum's motion and DENIES Plaintiffs' motion with respect to Plaintiffs' claims against Unum; and ALLOWS Keolis's motion and DENIES Plaintiffs' motion with respect to Plaintiffs' claims against Keolis.

I.      BACKGROUND

Sofiya Schwartz began working as a software programmer in February 2005 for the Massachusetts Bay Commuter Railroad Company, LLC (MBCR), which until 2014 operated Commuter Rail lines for the Massachusetts Bay Transportation Authority (MBTA).  Doc. No. 63 ¶¶ 1, 45.  At the outset of her employment, she enrolled in a life insurance plan (the "Plan") sponsored by MBCR and issued by Unum.  Id. ¶¶ 2-3.  Under the terms of the Plan, Ms. Schwartz was entitled to a life benefit equal to her salary, called the "Basic Benefit" and funded by MBCR.  Id. ¶ 5.  Participants in the Plan could also purchase additional life benefits ("Supplemental Life Benefits"), up to four-times their annual earnings, at their own expense and subject to the Plan's terms.  Id. ¶¶ 6-7.  The Plan capped a participant's total amount of coverage at $500,000.  Id. ¶ 7.

The Plan document (in some instances called the "Summary Plan Document") provides:

EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE (BASIC AND ADDITIONAL BENEFITS COMBINED) OVER:

$425,000 or over 3 x annual earnings[.]

Doc. No. 31 at 8.  The document defines "evidence of insurability" as "a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage" and notes that "[e]vidence of insurability will be at Unum's expense." Id. at 52.  The Plan also requires evidence of insurability for any amount of coverage applied for by "late entrants" (those employees applying for benefits more than 31 days after their eligibility

date[2]).  Id. at 23.  The Plan document instructs applicants that "[a]n evidence of insurability form can be obtained from your Employer."  Id. at 24.

In December 2008, Ms. Schwartz requested to enroll for Supplemental Life Benefits in the amount of two times her salary.  Doc. No. 63 ¶ 13.  Unum received Ms. Schwartz's request through MBCR.  Id.  Because she was a late entrant, she also submitted to MBCR evidence of insurability, which MBCR forwarded to Unum.  Id. ¶¶ 15, 53; Doc. No. 31 at 66-88.  Unum denied Ms. Schwartz's request by letter dated March 16, 2009 "due to [her] history of myelopathy."  Id. ¶ 54; Doc. No. 31 at 89-90.

In February 2014, the MBTA awarded the contract to manage, operate, and maintain the Commuter Rail system to Keolis, a separate and distinct company from MBCR, effective July 2014.  Id. ¶¶ 30, 55-56.  Keolis's Commuter Rail Operating Agreement (the "Operating Agreement") with the MBTA required Keolis to establish Commuter Rail positions matching those in existence on December 31, 2012 and to offer such positions to persons who had been members of the Commuter Rail workforce as of that date.  Id. ¶ 32.  Accordingly, Keolis extended an offer of employment to Ms. Schwartz in May 2014, with her employment with Keolis becoming effective July 2014.  Id. ¶ 24.  The Operating Agreement also required Keolis to provide the Commuter Rail workforce with certain benefits that MBCR had previously sponsored, including benefits under the Plan.  Id. ¶ 34.  Consequently, MBCR, Keolis, and Unum executed an Assignment of Group Policies (the "Assignment") in October 2014, under which MBCR assigned to Keolis "all of its rights, obligations, and liabilities as Policyholder" under the Plan.  Id. ¶ 17; Doc. No. 31 at 63.

---

[2] Under the Plan, the date of an employee's eligibility for coverage "is the later of: the plan effective date"—identified as July 1, 2003—"or the day after you complete your waiting period"—specified as "None."  Doc. No. 31 at 7, 23.

Pursuant to the Assignment, the Plan was retitled the "Keolis Commuter Services, LLC Plan" and amended to name Keolis as the Employer. Doc. No. 31 at 55. The "Employer's Original Plan Effective Date" remained unchanged. Id. at 7. The assigned Plan also identifies Keolis as the Plan Administrator and named fiduciary:

> Keolis Commuter Services, LLC is the Plan Administrator and named fiduciary of the Plan, with authority to delegate its duties. The Plan Administrator may designate Trustees of the Plan, in which case the Administrator will advise you separately of the name, title and address of each Trustee.

Id. at 51. However, the assigned Plan also retains the existing delegation of discretionary authority to Unum: "The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan." Id. at 62.

In October 2014, Keolis emailed all Commuter Rail employees to announce the upcoming open enrollment period. Doc. No. 63 ¶ 61. The "Benefits Enrollment and Change" form that Keolis distributed contained no reference to providing evidence of insurability. Rather, the form included an affidavit for each employee to sign, which stated, "I understand that I am responsible for reading the Summary Plan Documents for each Plan that is provided by Keolis to understand my benefits and any restrictions that may apply to my Benefit Plans." Doc. No. 64-4 at 56-59.

In November 2014, during Keolis's open enrollment period, Ms. Schwartz applied for Supplemental Life Benefits coverage for four times her salary by completing the Benefits Enrollment and Change form and faxing it to Keolis per the form's instructions. Id. ¶ 36. Keolis's human resources department acknowledged receipt of Ms. Schwartz's forms and confirmed that her monthly deduction matched her selected level of coverage. Id. ¶¶ 70-75. Between January 2015 and August 2015, Keolis deducted amounts from Ms. Schwartz's

paycheck representing premium payments for Supplemental Life Benefits coverage of four times her salary.  Id. ¶¶ 37-38.  At no time did Keolis request that Ms. Schwartz produce evidence of insurability.

On a monthly basis, Keolis forwarded premium payments from its employees to Unum and transmitted a "Group Insurance Premium Invoice," which detailed the number of employees receiving each coverage amount under the Plan and total amounts of premium payments.  Id. ¶¶ 39-40.  The invoice for January 2015 showed an increase of two employees receiving Supplemental Life Benefits, but did not identify Ms. Schwartz individually.  Unum did not request evidence of insurability or other documentation for these two employees.  Id. ¶ 78.

Ms. Schwartz died on August 28, 2015.  Doc. No. 63 ¶ 22.  Keolis communicated to Plaintiffs by letters dated September 3, 2015 that Ms. Schwartz had "a life insurance policy for $500,000 (life insurance limit) with the company."  Doc. No. 64-4 at 96-98.  On September 28, 2015, Keolis submitted to Unum an Employer's Statement indicating Ms. Schwartz's Basic Benefit coverage in the amount of $111,000 and Supplemental Life Benefits in the amount of $442,000.  Doc. No. 63 ¶¶ 23, 83; Doc. No. 31-1 at 14.  The Employer's Statement identified the "Date Employee Entered Eligible Class" (her eligibility date) as February 28, 2005.  Doc. No. 63 ¶ 24; Doc. No 31-1 at 14.

In October 2015, Unum approved payment to Plaintiffs of $111,000 pursuant to the Basic Benefit, but denied Plaintiffs' claims for Supplemental Life Benefits proceeds.  Id. ¶ 27.  In its claim denial letter dated October 19, 2015, Unum explained that because Ms. Schwartz "enrolled for coverage more than 31 days after her eligibility date, she was required to submit an evidence of insurability form."  Doc. No. 31-2 at 98.  The letter continued:

> She submitted the evidence of insurability form but her request for coverage was not approved.

> On March 16, 2009, Unum sent your mother a Notice of Adverse Action letter advising that her request for coverage was not approved.
>
> As your mother was not covered under the policy at the time of her death, August 28, 2015, no Supplemental Group Life Insurance benefits are payable.

Id.[3] Unum's claim denial letter made no reference to Ms. Schwartz's November 2014 application for Supplemental Life Benefits.

Plaintiffs administratively appealed Unum's decision by letter dated October 29, 2015. Doc. No. 31-3 at 54. They argued that Keolis was "an entirely separate employer" from MBCR and that Ms. Schwartz had applied to Keolis for Supplemental Life Benefits "at [the] earliest offering[,]" such that Ms. Schwartz's policy history with MBCR should not bear on Plaintiffs' claim. Id.

Unum upheld its denial of benefits by letter dated November 19, 2015. Id. at 90-95. Responding to Plaintiffs' specific concerns, Unum's letter noted:

> The policy through Sofiya's employer became effective on July 1, 2003. The Policy was formerly under MBCR, and on July 1, 2014, the company amended the policy to reflect the new name of the company "Keolis Commuter Services, LLC".
>
> Keolis Commuter Services, LLC is not a new/separate employer, and [Ms. Schwartz's] coverage remained under the original Unum policy with the exception of the company name change effective July 1, 2014.

Id. at 92. The letter observed that "[t]here is no record of any additional requests from Sofiya for Supplemental Life Insurance coverage, or any approvals under this policy" other than the March 2009 denial. Id. The letter also explained Unum's understanding of Keolis's responsibilities under the Plan:

> The employer maintains [sic] responsible for administrative tasks to include enrollment of employees and associated premium billing/accounting. The employer remits a lump sum monthly premium payment to Unum. The employer does not provide Unum with a

---

[3] An otherwise identical letter to Roman Schwartz reflected that Sofiya Schwartz was his wife. Doc. No. 31-3 at 13.

list of individual employee names associated with each premium received under the group policy.

Unum relies on the information submitted by the employer, as noted above, concerning premium payments.

Id. Unum concluded that any mistake by Keolis in seemingly granting Ms. Schwartz's latter request for Supplemental Life Benefits did not support Plaintiffs' claim for Supplemental Life Benefits proceeds: "The employer's actions, which are in direct conflict with the adverse decision of March 2009 notification to both her and them, does not mean that Sofiya had coverage at the time of her death because the employer was taking premiums from her payroll." Id.

Having exhausted their administrative remedies, Plaintiffs filed this action in federal court. Plaintiffs first allege that Keolis (in Count I) and Unum (in Count II) each, as a Plan fiduciary, breached the statutory duty set out in 29 U.S.C. § 1104(a)(1)(B)[4] by "allow[ing] Sofiya Schwartz to enroll in [the Plan]"—and, in Keolis's case, "encourag[ing] her to believe she was eligible for and was covered under the Plan, and deduct[ing] premiums from her salary to pay for the Plan"—"when [Keolis and/or Unum] knew or should have known that Sofiya may not be eligible to participate in the Plan." Doc. No. 1 ¶¶ 50, 60. Plaintiffs seek "damages in the amount of the Policy" ($500,000)—i.e., the amount to which enrollment of Ms. Schwartz for Supplemental Life Benefits would entitle them.[5] Id. ¶¶ 52, 62.

Plaintiffs next allege that Keolis (in Count III) and Unum (in Count IV) each, as a Plan

---

[4] ERISA requires fiduciaries to discharge their duties with respect to a plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

[5] Plaintiffs state the amount of relief sought as $389,000 in their memoranda on the instant motions, presumably to reflect the $111,000 payment to which they are entitled automatically under Ms. Schwartz's Basic Benefit. See, e.g., Doc. No. 56 at 18.

fiduciary, breached its statutory duty by "represent[ing] to Sofiya Schwartz that she was a participant in the Plan" and, in Keolis's case, "represent[ing] to Sofiya Schwartz and Plaintiffs that Sofiya Schwartz had Supplemental Group Life Insurance coverage up to and after the time of Sofiya's death" and "accept[ing] premiums for coverage for Sofiya Schwartz up until her death." Id. ¶¶ 72-74, 89. In these counts, Plaintiffs seek equitable "surcharge, i.e. make-whole relief" in the amount of $500,000 pursuant to 29 U.S.C. § 1132(a)(3).[6] Id. ¶¶ 80, 93.

Finally, Plaintiffs allege that Unum, acting as a Plan fiduciary, breached its statutory duty by "wrongfully den[ying] Plaintiffs' claims based on the erroneous assertion[s]" that Ms. Schwartz had not enrolled for Supplemental Life Benefits after her original request in December 2008 and that MBCR and Keolis were the same company. Id. ¶¶ 97-105, 110-118. Plaintiffs seek to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (in Count V) and "make-whole relief" under 29 U.S.C. § 1132(a)(3) (in Count VI), each in the amount of the life insurance coverage Plaintiffs allege Ms. Schwartz was enrolled in ($500,000). Id. ¶¶ 106, 119.

II.     DISCUSSION

A.      Legal Standard

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted). The Court cannot grant summary judgment

---

[6] 29 U.S.C. § 1132(a)(3) empowers a beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

However, in a challenge to a denial of benefits under ERISA, review is based on the administrative record; "summary judgment is simply a vehicle for deciding the issue"; and "the non-moving party is not entitled to the usual inferences in its favor." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

At all relevant times, Unum maintained such discretionary authority. The Plan document's Certificate of Coverage provides: "When making a benefit determination under the Summary of Benefits, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits." Doc. No. 31 at 5. The Plan document further notes:

> The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. […] Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

Id. at 62. Accordingly, to the extent Plaintiffs' claims implicate Unum's discretionary authority to make benefit determinations under the Plan, the Court reviews those determinations under the deferential "arbitrary and capricious" or "abuse of discretion" standard. Maher v. Mass. Gen. Hosp. Long Term Disability Plan, 665 F.3d 289, 291 (1st Cir. 2011) (citation omitted).

B.     Plaintiffs' Motion to Amend

Plaintiffs move to amend Count III of their Complaint to include specific requests for reformation of the Plan and for Keolis to be bound by its purported confirmation to Ms. Schwartz of her participation in Supplemental Life Benefits.[7]  Doc. No. 75.  The effect of amendment would be to clarify that Plaintiffs seek each of the remedies within the traditional equitable powers of a district court and available in the ERISA context: reformation of the contract, imposition of a surcharge, and estoppel.  See CIGNA Corp. v. Amara, 563 U.S. 421 (2011).  Keolis argues that Plaintiffs' motion must be denied because the amendments would be futile.  At later stages of a case (after discovery has closed and a summary judgment motion has been filed), a proposed amendment must be "not only theoretically viable but also solidly grounded in the record."  Resolution Trust Corp. v. Gold, 30 F.3d 251, 251 (1st Cir. 1994).

Plaintiffs' motion to amend is DENIED.  With respect to the prayer for reformation, Plaintiffs' amendment would be futile.  Reformation may be available in cases of fraud and mutual mistake in connection with the formation of a contract.  See Amara, 563 U.S. at 443 (noting that courts in equity historically reformed contracts to reflect the mutual understanding of contracting parties where fraud "materially affected" the "substance of the contract"); Stone v. Gelinas, 2017 WL 2306415 (D. Mass. Jan. 17, 2017) (citing Amara, applying federal common law to ERISA claims, and noting that, "At equity, a contract could be reformed if the instrument was executed in ignorance or mistake of facts material to its operation" (citation omitted)).

---

[7] Count I of Plaintiffs' Complaint already asserts that Keolis should be bound by its purported enrollment of Ms. Schwartz in the Plan.  Doc. No. 1 ¶ 51.  In its current form, each count in the Complaint requests "any further and additional relief that this Court deems appropriate under the circumstances."  Doc. No. 1.  Further, Count III specifically alleges harm which "cannot be remedied absent equitable or remedial relief as the Court may deem necessary."  Id. ¶ 80.  Thus, the amended Count III would expressly state two forms of relief that Plaintiffs previously requested indirectly.

Plaintiffs have not alleged fraud in their Complaint, and they allege no mistake by either defendant that influenced the terms of the Plan.

An amendment requesting estoppel-like relief would also be futile. "Equitable estoppel operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." Amara, 563 U.S. at 441 (citation omitted). Here, equitable estoppel would hold Keolis to its representation to Ms. Schwartz that she was enrolled for the maximum amount of coverage available under the Plan. The First Circuit, which has not to date formally recognized an equitable estoppel claim under § 1132(a)(3), has postulated that "an equitable estoppel claim consists of two elements: (1) the first party must make 'a definite misrepresentation of fact' with 'reason to believe' the second party will rely on it […]; and (2) the second party must reasonably rely on that representation to its detriment[.]" Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 782 (1st Cir. 2014). Equitable estoppel claims under ERISA are "limited to statements that *interpret* the plan and cannot extend to statements that would *modify* the plan." Id. (explaining that ERISA requires plans to inhere in a written instrument with a stated amendment procedure, such that a plan may not be modified outside of the instrument and in contravention of the procedure).

Even if Plaintiffs can establish a misrepresentation of fact and detrimental reliance, Plaintiffs' request for equitable estoppel relates to statements that conflict with the plain terms of the Plan. Any representation by Keolis to Ms. Schwartz confirming her enrollment for Supplemental Life Benefits contradicts the Plan's clear evidence of insurability requirement, which the parties do not dispute that Ms. Schwartz did not meet. A statement affirming her eligibility would necessarily strike that requirement from the Plan. Thus, an amendment to Count III adding a prayer for equitable estoppel would be futile.

C.      Plaintiffs' Motion to Strike Bunker Affidavit

In response to Plaintiffs' contention that, had she known she was not enrolled in Supplemental Life Benefits, Ms. Schwartz "could have turned to the open market for insurance[,]" Doc. No. 56 at 16, Keolis presents expert opinion (the "Bunker Affidavit") that,

> had Ms. Schwartz attempted to obtain similar or comparable individual life insurance on the open market in late 2014, while undergoing cancer treatment, she would not have been able to obtain such coverage from another insurer, let alone at the premium amounts deducted from her paycheck. Based on her medical history, including her cancer diagnosis and treatment in 2014, Ms. Schwartz would not have been able to provide the requisite evidence of insurability necessary to obtain a similar or comparable individual life insurance product that required medical underwriting.

Doc. No. 61 ¶ 8.

Plaintiffs seek to strike these statements from the Bunker Affidavit as lacking adequate foundation, not being based on personal knowledge, and speculative as to facts not in the Administrative Record. Doc. Nos. 73, 74. Plaintiffs' motion to strike is DENIED. Plaintiffs stress that the affiant, an insurance executive, lacked personal knowledge of Ms. Schwartz's treatment and FMLA leave. Even were this true, the affiant's lack of personal knowledge of Ms. Schwartz's health in late-2014 does not preclude him from offering a conditional opinion about Ms. Schwartz's ability to obtain insurance, where such opinion does not seek to establish Ms. Schwartz's actual health condition at that time. Further, Plaintiffs do not explain how the affiant's extensive experience with providing life insurance policies to individuals provides inadequate foundation for an assessment related to underwriting standards, with which the affiant declares he is familiar. The Court therefore considers the Bunker Affidavit in its entirety insofar as it bears on whether Ms. Schwartz would have found life insurance options available to her had she in fact been receiving treatment for cancer at the time of her hypothetical search.

D.      Recovery of Benefits under 29 U.S.C. § 1132(a)(1)(B)

Though also framed as claims for breach of fiduciary duty, Counts I, II, and V seek to recover benefits from the defendants under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes civil actions by a beneficiary "to recovery benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[8]

i.      *Recovery of Benefits from Unum*

With respect to Counts II and V, Unum argues that Plaintiffs are not entitled to recover benefits under the Plan because Unum never approved Ms. Schwartz for Supplemental Life Benefits and because Unum's decisions to deny Ms. Schwartz's 2008 application for those benefits and to deny Plaintiffs' claims were reasonable. Unum maintains that, under several provisions of the Plan, Ms. Schwartz would have been required to provide Unum with evidence of insurability, based on the timing and amount of her request, in order to obtain additional benefits of four times her salary. Doc. No. 50 at 3-4. Unum never received evidence of insurability in connection with this request. To the extent that Counts II and V seek recovery of benefits pursuant to § 1132(a)(1)(B), Unum's motion for summary judgment is ALLOWED, and Plaintiffs' motion is DENIED.

In an action to recover benefits under § 1132(a)(1)(B), the question for the Court "is simply whether the [Court] deems the [decision-maker's] denial of benefits irrational." Liston v. Unum Corp. Officer Sev. Plan, 330 F.3d 19, 24 (1st Cir. 2003). Unum's denial of Plaintiffs' claim is supported by the facts in the Administrative Record. Ms. Schwartz applied for

---

[8] As Unum notes, Doc. No. 50 at 5 n.3, Counts I, II, and V of Plaintiffs' Complaint appear to merge a recovery of benefits claim pursuant to 29 U.S.C. § 1132(a)(1)(B) with a claim for equitable relief to redress a breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3). The Court addresses both theories for these three counts separately.

Supplemental Life Benefits of twice her salary in 2008 and submitted evidence of insurability; Unum denied this request due to her medical history. No evidence in the Administrative Record suggests that Ms. Schwartz submitted any evidence of insurability when she applied to Keolis in 2014 for Supplemental Life Benefits in the amount of four times her salary, even though the Plan document required her to do so if she (1) requested any amount of additional benefits as a late entrant or (2) requested benefits exceeding $425,000. Unum's determination that no Supplemental Life Benefits coverage for Ms. Schwartz ever took effect in the absence of suitable evidence of insurability—which Unum notes the Plan document would have required for two reasons[9]—was neither arbitrary nor capricious.

### ii. *Recovery of Benefits from Keolis*

Keolis argues that Count I fails to state a claim for recovery of benefits against Keolis because Unum, not Keolis, determined Ms. Schwartz's coverage and Plaintiffs' benefits payments under the Plan. Plaintiffs admit that their claim against Keolis "does not involve judicial review of a decision to deny Mrs. Schwartz's husband and sons supplemental life benefits upon her death[,]" and that "Keolis delegated that responsibility to Unum[.]" Doc. No. 56 at 7. Thus, to the extent that Count I seeks recovery of benefits pursuant to § 1132(a)(1)(B), Keolis's motion is ALLOWED, and Plaintiffs' motion is DENIED.

---

[9] Unum determined that Ms. Schwartz was a late entrant because she had been enrolled in the Plan since 2005 but did not request any additional benefits until 2008. See, e.g., Doc. No. 31-3 at 4. In light of the circumstances of the 2014 transition of Commuter Rail operations to Keolis—namely, the continuation of the same work force, the preservation of preexisting employee benefits, and the Assignment of the existing Plan—Unum's carrying over of participants' Plan eligibility dates (based on employment with MBCR) was not unreasonable. Unum also notes that Ms. Schwartz's request for Supplemental Life Benefits in the amount of four-times her salary of $111,000 exceeded the $425,000 threshold. Doc. No. 50 at 8.

E.      Equitable Relief under 29 U.S.C. § 1132(a)(3)

All counts in Plaintiffs' Complaint request relief for alleged breaches of fiduciary duty under ERISA.  ERISA's so-called "catch-all" provision, 29 U.S.C. § 1132(a)(3), empowers beneficiaries to bring actions for "appropriate equitable relief" to redress violations of ERISA Subchapter I (including the statutory fiduciary duty) or terms of the Plan.

To succeed on a claim for breach of the statutory fiduciary duty, 29 U.S.C. § 1104(a), a plaintiff must show (1) that the defendant was "acting as a fiduciary of the Plan when it engaged in the conduct about which [Plaintiffs] complain" and (2) that the conduct "sufficed to breach the fiduciary duty that ERISA imposes."  Ellis v. Fidelity Mgmt. Trust Co., 257 F.Supp.3d 117, 126 (D. Mass. 2017) (citations omitted).

*i.      Breach of Fiduciary Duty by Unum*

Unum urges the Court to grant summary judgment in its favor with respect to Plaintiffs' claims that Unum breached a fiduciary duty (Counts II, IV, V, and VI) because Plaintiffs' allegations in these claims are incorrect as a matter of fact.  Plaintiffs contends that summary judgment in their favor on these claims is appropriate.  The Court ALLOWS Unum's motion, and DENIES Plaintiffs' motion, for summary judgment with respect to each of these counts.[10]

The Court enters summary judgment for Unum on Count II because nothing in the Administrative Record supports Plaintiffs' allegation that Unum "allowed Sofiya Schwartz to enroll in [Supplemental Life Benefits.]"  While the Plan delegates authority to Unum to make benefit determinations, the Administrative Record contains no evidence that Ms. Schwartz applied for Supplemental Life Benefits to Unum; that Unum ever received or considered an application for such benefits from Ms. Schwartz; or that Unum ever approved Ms. Schwartz for

---

[10] The Court assumes, without so holding, that Unum was a fiduciary under the Plan for purposes of evaluating Plaintiffs' breach of fiduciary duty claims.

Supplemental Life Benefits coverage. The Plan document notes that "[c]overage will begin at 12:01 a.m. on the date Unum approves your evidence of insurability form[,]" Doc. No. 31 at 24; the Administrative Record nowhere indicates that Unum gave Ms. Schwartz this approval.

Summary judgment also enters for Unum on Count IV, as the Administrative Record contains no support for Plaintiffs' allegations that Unum "accepted premiums for coverage for Sofiya Schwartz up until her death" and "represented to Sofiya Schwartz that she was a participant in the Plan." Ms. Schwartz did not pay Unum for coverage. Rather, Keolis deducted premium payments from her payroll and forwarded a monthly group policy payment to Unum based on aggregate participants enrolled in each level of coverage. Unum's receipt of this group policy payment from Keolis does not constitute an acceptance of premiums from Ms. Schwartz for additional coverage. See Brenner v. Metropolitan Life Ins. Co., 2015 WL 1307394 (D. Mass. Mar. 23, 2015) (rejecting plaintiff's argument that insurance company breached fiduciary duty by receiving payments submitted to company by employer). Further, the Administrative Record contains no communications from Unum to Ms. Schwartz that could have suggested to Ms. Schwartz that she was enrolled for Supplemental Life Benefits.

Counts V and VI assert that Unum breached its fiduciary duty by wrongfully denying Plaintiffs' claims. These claims overlap with Plaintiffs' challenge to Unum's benefits determination. The Court already has found that Unum's determination was not arbitrary and capricious or unreasonable in *supra* Section II.D.ii. Unum accordingly did not wrongfully deny Plaintiffs' claim, such that judgment on Counts V and VI also enters for Unum to the extent that they allege a violation of a fiduciary duty.

*ii.*     *Breach of Fiduciary Duty by Keolis*

Keolis argues that summary judgment should enter in its favor on Plaintiffs' claims for breach of fiduciary duty (Counts I and III) because Keolis performed administrative functions, not fiduciary functions; because Keolis did not fail to perform any fiduciary obligation it may have had to Plaintiffs; and because Plaintiffs seek remedies that are not "appropriate" under § 1132(a)(3).  Doc. No. 47 at 2.

The Plan document provides that Keolis is "a named fiduciary of the Plan[,]" Doc. No. 31 at 51, pursuant to ERISA Section § 402(a)(2), 29 U.S.C. § 1102(a), a fact that Keolis omits from its filings.  Thus, regardless of its delegation of discretionary authority to Unum, it owed fiduciary duties to Plan participants under ERISA § 1104, including a fiduciary duty of care.  Further, as Plaintiffs note, Doc. No. 56 at 8, the "functional fiduciary" analysis upon which Keolis relies is irrelevant when the Plan already establishes a party as a named fiduciary.  Keolis nonetheless argues that it was not acting as a fiduciary of the Plan while processing applications for benefits, setting up payroll deductions, paying premiums to Unum, and processing group insurance premium invoices—functions that Keolis characterizes as "administrative."  Doc. No. 48 at 17-19.  However, the Department of Labor (DOL) regulations that Keolis cites, 29 C.F.R. § 2509.75–8(D–2), clarify functions as fiduciary or administrative only for "persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures[.]"  These regulations do not describe Keolis.

Keolis is responsible for enrolling participants in the Plan.  In Keolis's words, Keolis "acts as an intermediary between an employee and Unum, the insurer."  Doc. No. 48 at 18.  This function necessarily includes submitting materials to Unum for an eligibility determination and communicating to participants the status of their enrollment.  Far from merely administrative,

Keolis's gatekeeping function is plainly fiduciary in nature to the extent that it determines whether any benefits determination is made in the first instance. Keolis owed a fiduciary duty to Ms. Schwartz to perform its participant-enrollment function consistent with the care outlined in § 1104(a)(1)(B). However, Keolis neglected to send Ms. Schwartz's application to Unum or to obtain evidence of insurability from Ms. Schwartz. Thus, based on the undisputed material facts in this case, Keolis failed to satisfy these fiduciary responsibilities with due care.

Keolis also took steps that, in some circumstances, could have led Ms. Schwartz to believe that her enrollment for Supplemental Life Benefits took effect under the Plan. The action of setting up payroll deductions had a communicative effect. However, besides Plaintiff Roman Schwartz's sworn statement that "Sofiya was 100% sure that she was insured by UNUM[,]" Doc. No. 59 ¶ 6, Plaintiffs offer no evidence that Ms. Schwartz actually understood Keolis's actions as confirming for her that her coverage included the requested Supplemental Life Benefits. In any event, any such understanding on the part of Ms. Schwartz, on the particularly unusual facts of this case, was not reasonable. Ms. Schwartz at that time knew: that Unum had previously required her to submit evidence of insurability; that Unum denied her Supplemental Life Benefits coverage after reviewing that document specifically because she suffered from myelopathy; that she suffered from cancer around the time of her request for Supplemental Life Benefits in 2014; that her cancer had required her hospitalization and leave from work around that time; that neither Keolis nor Unum had, in 2014-2015, disclaimed the significance of any of the foregoing; and that the Plan under which she sought Supplemental Life Benefits was the same Plan under which she previously did not qualify for that coverage.

Moreover, Plaintiffs fail to establish that the equitable remedy of surcharge would be available. The Supreme Court has explained that surcharge in the ERISA context follows from

the power of courts in equity to "provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." Amara, 563 U.S. at 441 (citation omitted). "[A] fiduciary can be surcharged under [§ 1132(a)(3)] only upon a showing of actual harm—proved (under the default rule of civil cases) by a preponderance of the evidence." Id. at 444. "That actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents." Id.

Plaintiffs do not advance sufficient evidence of actual harm as a result of Keolis's breach. They merely speculate that Ms. Schwartz would have sought additional or different life insurance had she and her husband not "both thought she was covered by the UNUM policy." Doc. No. 59 ¶ 11. Keolis maintains that Ms. Schwartz would not have been able to obtain life insurance coverage on the open market in late 2014. The Administrative Record indicates that Ms. Schwartz's underwent treatment for cancer around that time. See, e.g., Doc. No. 64-5 at 36 (letter from Keolis human resource personnel referencing Ms. Schwartz's recovery and possible leave); id. at 37 (note from treating physician reflecting period of inpatient care); Doc. No. 64 at 46-49 (emails referencing Ms. Schwartz's work-from-home arrangements, treatment, potential leave, and cancer growth). Keolis also offers expert opinion that cancer treatment would have foreclosed alternative life insurance options. Doc. No. 61 ¶¶ 8-9. Plaintiffs offer no countervailing evidence of Ms. Schwartz's ability to obtain insurance.

Plaintiffs also suggest that they suffered actual harm in the form of Ms. Schwartz's "statutory right to receive accurate information." Doc. No. 72 at 1. They cite Amara for the proposition that failure to provide accurate information in violation of ERISA "is harm sufficient to justify the surcharge relief." Id. at 2. The Supreme Court in Amara suggested that a "failure

to provide proper summary information, in violation of the statute, [would injure] employees even if they did not themselves act in reliance on summary documents[.]" <u>Amara</u>, 563 U.S. at 444.  Indeed, ERISA establishes a right of plan participants to receive specific information about a plan, including, *inter alia*, summary information of the kind cited in <u>Amara</u>.  By contrast, Plaintiffs assert only a generalized right to accurate information about Ms. Schwartz's enrollment status without reference to a specific protection in ERISA.  Likewise, nothing in the Fourth Circuit case that Plaintiffs cite, <u>McCravey v. Metropolitan Life Insurance Co.</u>, 690 F.3d 176 (4th Cir. 2012), supports their argument that they have suffered a statutory, informational harm warranting surcharge.

Accordingly, the Court ALLOWS Keolis's motion for summary judgment as to Plaintiffs' claims against Keolis for breach of fiduciary duty and DENIES Plaintiffs' motion for summary judgment with respect to those claims.

*    *    *

III.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion to amend their Complaint (Doc. No. 75); ALLOWS Plaintiffs' motion to amend their cross-motion for summary judgment on their claims against Unum (Doc. No. 78); DENIES Plaintiffs' motion to strike (Doc. No. 73); ALLOWS Unum's motion for summary judgment (Doc. No. 49) and DENIES Plaintiffs' cross-motion (Doc. No. 57) with respect to Plaintiffs' claims against Unum; and ALLOWS Keolis's motion for summary judgment (Doc. No. 47) and DENIES Plaintiffs' cross-motion (Doc. No. 55) with respect to Plaintiffs' claims against Keolis.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge